# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEGHAN MULKERIN ) | |
| ) | |
|       Plaintiff, ) | |
| ) | |
|       v. ) | Civil Action No. 1:19-cv-3850 |
| ) | |
| Dr. David J. Skorton, Secretary, ) | |
| Smithsonian Institution ) | |
| ) | |
|       Defendant-Agency. ) | |
| ) | **JURY TRIAL DEMANDED** |

## COMPLAINT
### (Pregnancy Discrimination; Retaliation)

Pursuant to Federal Rule of Civil Procedure Rule 3, Plaintiff Meghan Mulkerin (hereafter "Plaintiff"), by his undersigned attorney, hereby files his Complaint against her former employer, the Smithsonian Institution (hereafter "Defendant").

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f), and the Pregnancy Discrimination Act of 1978, or 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k).

2. On or about August 10, 2017, Plaintiff filed a formal Charge of Discrimination, EEOC No. 570-2017-01411X, with the EEOC.

3. The EEOC accepted Plaintiff's formal Charge of Discrimination as timely.

4. Defendant was duly notified about Plaintiff's administrative complaints and was given an opportunity to respond to his allegations.

5. The EEOC made a decision on the merits of Plaintiff's discrimination claims and on , October 1, 2019, issued Plaintiff a Notice of Right to Sue.

6. The originally filed Complaint in this matter was filed within 90 days after Plaintiff received the Notice of Right to Sue on her EEOC complaint.

7. Plaintiff has exhausted the administrative remedies available to him under 42 U.S.C. §§ 2000e, et seq., and all conditions precedent have occurred or been performed.

8. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), as Defendant has extensive and deliberate contacts in this District and Division.

## II. THE PARTIES

9. Plaintiff is a resident of the District of Columbia and a former employee of Defendant.

10. Defendant is a governmental entity created by the United States Government which includes 19 museums and the Smithsonian National Zoo which employed the Plaintiff for the duration of the actions alleged in this complaint.

## III. FACTS CENTRAL TO PLAINTIFF'S CLAIMS

1. Plaintiff Meghan Mulkerin (female, mother) began her position as "Web Content Writer," job series IS-1001-09, with the Smithsonian National Zoo, Office of Communications on April 18, 2016.

2. At that time, her child was approximately eight months old.

3. Plaintiff was at the grade 9, step 3 level.

4. Her position description states that the position will have "closer supervision and guidance" than a grade 11 Web Content Writer, and that the incumbent "usually works under strict deadlines."

5. Plaintiff was a trust employee, which means that she was paid from Smithsonian trust funds and not federal funds.

6. On April 18, 2016, Plaintiff signed a Memorandum of Understanding with the Smithsonian's Office of Human Resources affirming that she understood that her appointment was temporary and not to exceed April 17, 2018; she was not guaranteed to be employed by the Smithsonian for the entire two-year term of her appointment; and she was subject to termination prior to the "not-to-exceed" date for a variety of reasons.

7. Plaintiff's first line supervisor was Media and Web Content Specialist Amy Enchelmeyer (female, expecting), and her second line supervisor was Assistant Director Pamela Baker-Masson (female, mother).

8. Ms. Enchelmeyer and Ms. Baker-Masson are the identified responsible management officials in this matter.

9. Ms. Baker-Masson was the Assistant Director of the Office of Communications.

10. In addition to Ms. Baker-Masson, Ms. Enchelmeyer and Plaintiff, the other employees in the Office of Communications were Annalisa Meyer, Devin Murphy, and Jennifer Zoon (all female).

11. During the interview process, Plaintiff informed Ms. Enchelmeyer and Ms. Baker-Masson that she was a nursing mother who would require pumping breaks throughout the workday.

12. Ms. Enchelmeyer and Ms. Baker-Masson hired Plaintiff knowing her pumping needs.

13. Plaintiff was hired to assist with the launch of a new National Zoo website in early August 2016.

14. At the time of her start date, the website was scheduled to launch in approximately three and a half months.

15. Nonetheless, Ms. Enchelmeyer frequently micromanaged plaintiff by demanding to be informed of how many minutes were spent working on each task.

16. Ms. Enchelmeyer also would not assign new tasks to Plaintiff without forcing Plaintiff to directly contact her after each previous task was completed.

17. By contrast, none of Plaintiff's similarly situated colleagues were subjected to such scrutiny.

18. Plaintiff generally pumped four times per day, with each pumping session lasting 20-30 minutes.

19. On May 16, 2016, Plaintiff added four 30-minute unavailable time periods to her Outlook calendar, at 10:30 AM, 12:30 PM, 2:30 PM, and 4:30 PM, to indicate when she would be taking her pumping breaks.

20. On June 21, 2016, in response to Plaintiff's email stating that she was not producing the volume of pumped milk she was hoping for, Ms. Enchelmeyer responded, "I'm sorry ☹. Take all the time you need to pump."

21. Nonetheless, Enchelmeyer behaved in a manner that indicated that she took exception to Plaintiff's breastfeeding needs.

22. During Plaintiff's employment, Enchelmeyer intentionally scheduled several meetings that conflicted with Plaintiff's needed pumping times.

23. Enchelmeyer's manipulation of the meetings caused Plaintiff anxiety, embarrassment, and discomfort, as well as pain and potential infection from engorgement.

24. On a weekly basis, approximately 20 individuals from various Zoo offices, including the Office of Communications, and the Friends of the National Zoo, the non-profit partner of the Zoo responsible for fundraising, held a meeting which occurred on Mondays at 10 AM and had been ongoing for over a year before Plaintiff was hired.

25. Plaintiff was responsible for note-taking during the meeting, but was permitted to excuse herself to pump, if needed, at which point Ms. Enchelmeyer took over note-taking.

26. The website team, which included employees from the Office of Communications and employees and contractors from the office of Information Technology (IT), convened daily for a "Quick meeting (10 minutes or less)" to discuss progress on the website and the day's agenda.

33. Plaintiff asked Ms. Enchelmeyer and Ms. Baker-Masson to telework from home one day per week, on Wednesdays, and her supervisors granted this request.

34. Plaintiff was permitted to continue teleworking despite ongoing issues connecting to the local Smithsonian drives.

35. On Friday, July 8, 2016, at 12:05 PM, Plaintiff sent Ms. Enchelmeyer an email stating that her nephew was attending Smithsonian summer camp the following week, from 9 AM – 4:30 PM, and that she needed to drop off and pick him up within those hours. Therefore, she proposed three options: (1) take annual leave or leave without pay; (2) bring her nephew to the office, take him to camp at 9, pick him up at 4:30, and bring him

back to the office if her hours were not met; or (3) work 9:30-4:00 and telework the remaining time.

36. Ms. Enchelmeyer responded that she could not accommodate any of those three options, especially at that "critical point" in the project.

37. On Sunday, July 10, 2016, Plaintiff contacted Smithsonian ombudsperson Chandra Heilman via telephone and asked her to assist with obtaining a schedule change.

38. On Monday, July 11, 2016, at 8:06 AM, Plaintiff emailed Ms. Enchelmeyer, stating that she was in that morning and would need to leave by 4:00 to pick up her nephew.

39. Clearly, Enchelmeyer expressed frustration with Plaintiff's request and activity in contacting the ombudsperson to get help with changing her schedule because an argument.

40. Enchelmeyer further retaliated against Plaintiff's activity by assigning her more work than could be reasonably completed during July of 2016.

41. Shortly thereafter, On July 27, 2016, Plaintiff was terminated - she was placed on administrative leave, and her separation date was on August 10, 2016.

### IV. STATEMENT OF CLAIMS

**Count I: Title VII Sex Discrimination and the Pregnancy Discrimination Act of 1978 (discrimination with respect to sex or pregnancy or pregnancy-related conditions). 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k)**

42. Plaintiff adopts and incorporates by reference ¶¶ 1-41 above.

43. Plaintiff was a member of a protected class because she is a woman, mother, and at the time was pregnant.

44. Plaintiff suffered an adverse employment action when Defendant unlawfully discriminated against Plaintiff on the basis of her gender and class when she denied the opportunity to properly pump milk during work hours, despite being aware of Plaintiff's special needs.

45. Plaintiff was qualified to do the position because she had multiple years of prior experience with the Smithsonian and was highly sought after for the role working at Smithsonian.

46. Defendant treated similarly situated employees outside the protected class more favorably in that they were not scrutinized, micromanaged, harassed, and ultimately retaliated against.

47. As a result of Defendant's violations of Title VII and the Pregnancy Discrimination Act of 1978, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## Count II: Retaliation

48. Plaintiff adopts and incorporates by reference ¶¶ 1-47 above.

49. Plaintiff engaged in protected activity when she contacted the ombudsperson on or around July 11, 2016, to request assistance in arranging her schedule to support her family childcare needs.

50. Plaintiff suffered an adverse employment action when she was terminated shortly thereafter, less than three weeks after her protected activity and exchange with supervisors regarding these needs.

51. There was causal connection between the adverse employment action against Plaintiff and the protected activity because there is a close temporal proximity between the events,

7

and the same individual who refused to change the schedule ultimately was the same individual who terminated Plaintiff.

52. As a result of Defendant's retaliatory actions, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## IV. <u>REMEDIES SOUGHT</u>

53. WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting him the following relief from Defendant:

a. A declaratory judgment that defendant discriminated against Plaintiff, as alleged herein;

b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Plaintiff;

c. Compensatory and punitive damages, pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

d. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

e. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

f. Such other and further relief as to the Court seems just and warranted.

## VI. <u>JURY TRIAL DEMAND</u>

54. Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Respectfully submitted,

/s/ *Matthew Hunter*

---
MATTHEW HUNTER
DC Bar No. 1510741

Simply Law, LLC
3 Bethesda Metro Center, Suite 700
Bethesda, MD 20814
T: (202) 630-5123
matthew@simplylawllc.com
*Plaintiff's Counsel*